**UNITED STATES of America, Plaintiff,**

**v.**

**FIRST INTERSTATE BANK OF IDAHO, N.A., Defendant.**

**Civ. No. 89–3053.**

United States District Court, D. Idaho.

March 30, 1992.

Maurice O. Ellsworth, U.S. Atty., D. Idaho, Boise, Idaho, Keith P. Duet, Trial Atty.,

Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Louis L. Uranga, Uranga, Uranga & Bieter, Boise, Idaho, Everett D. Hofmeister, Coeur d'Alene, Idaho, for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

RYAN, District Judge.

### I. FACTS AND PROCEDURE

This suit arises out of a Complaint filed by the United States against Defendant First Interstate Bank, N.A. (Bank), for its failure to honor a Notice of Levy served upon it on June 27, 1983. On May 25, 1981, the Internal Revenue Service (IRS) made an assessment against taxpayer Daniel Bauer for unpaid federal income taxes for the tax year of 1977 in the amount of $8,939.31. On January 14, 1982, the IRS filed a notice of federal tax lien in Kootenai County, Idaho, the county of taxpayer's residence and the county in which the escrow account was located. (*See* Moore Decl., filed Nov. 5, 1990, Ex. 1.) On June 27, 1983, the IRS served upon the Bank a Notice of Levy in the amount of $11,857.76. (*See* Complaint, filed Aug. 20, 1989, Ex. A.) In this Notice of Levy, the IRS sought all property, rights to property, credits, and bank deposits in the possession of the bank which belonged to the taxpayer. The IRS assumed that the Notice of Levy should encompass an escrow account in the name of the taxpayer.[1]

The Bank responded to the Notice of Levy by stating: "We do not find any checking or savings account at this branch. Also the escrow listed has been assigned and is not in the name of Daniel Bauer." (*See* Seaman Aff.Supp.Def.'s Summ.J., filed Oct. 15, 1990, Ex. A.) The bank took the position then, and continues to assert that same position now, that because the funds in the escrow account had been assigned on August 31, 1982, to Mr. and Mrs. James D. Bauer, the bank no longer had in their possession any funds of Mr. Daniel Bauer to turn over to the IRS.

Subsequently, the IRS returned the Notice of Levy, advising the bank that the levy had priority over any assignment that occurred subsequent to January 18, 1982. On October 27, 1983, the IRS made a Final Demand for payment pursuant to the Notice of Levy. (*See* Complaint, filed Aug. 30, 1989, Ex. B.) However, the bank maintained its position and did not honor the levy.

The government filed this suit against the Bank on August 30, 1989, claiming that the Bank is liable under 26 U.S.C. § 6332 in an amount equal to the value of property or funds that they had in their possession on June 27, 1983, the date the Notice of Levy was served.[2] On June 26, 1990, the bank filed its Answer and alleged that at the time of the service of the Notice of Levy the bank possessed no property, rights to money, or credits of taxpayer Bauer, as the funds in the escrow account had been assigned to a Mr. and Mrs. James Bauer.

On October 15, 1990, the defendant moved for summary judgment. The government responded to this motion on November 5, 1990, by filing its own Motion for Summary Judgment. The parties have filed their respective responses and replies to these motions. On May 9, 1991, a hearing on these motions was held in Boise, Idaho. During the hearing, the court took the motions under advisement and encouraged the parties to work out a solution to this case. Shortly thereafter, on May 31, 1991, the Bank filed a Motion for Leave to File Counterclaim. The government filed its brief in opposition to this motion on May 30, 1991. On June 6, 1991, the Bank filed its reply brief. On July 22, 1991, Daniel Bauer and Helen Bauer both moved to in-

---

1. This escrow account was established in 1973 as a result of the sale of some of Mr. Bauer's property. (*See* Mem.Opp.Def.'s Summ.J. and Supp.U.S.'s Summ.J., filed Nov. 5, 1990, at 2.)

2. By the government's calculations, the balance of the escrow account on July 27, 1983, was $7,849.79. (Mem. in Opp. to Def.'s Summ.J. and Supp.U.S.'s Summ.J., filed Nov. 5, 1990, at 6 n. 1.) This amount does not appear to be disputed by the Bank.

tervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. In addition, these parties also conditionally filed an answer to the Complaint should the court decide to allow them to intervene. The government filed its response to the motions to intervene on August 2, 1991, and a reply to this response was filed on September 3, 1991. Accordingly, the motions are now fully briefed and ripe for review.

## II. ANALYSIS

### A. CROSS–MOTIONS FOR SUMMARY JUDGMENT

#### 1. *Summary of arguments.*

In the Bank's brief in support of its Motion for Summary Judgment, the Bank argues that when it received the Notice of Levy on June 27, 1983, it did not possess any property or rights to property of the taxpayer, Daniel Bauer. The Bank notes that the funds in the escrow account had been assigned to James D. Bauer and Helen E. Bauer[3] on August 31, 1982, and therefore, the funds belonged to these third parties and not Daniel Bauer. (Seaman Aff.Supp.Def.'s Summ.J., filed Oct. 15, 1990, at 4.) In addition, the Bank argues that both the Notice of Levy[4], and the Final Demand[5] requested that funds which belonged to Daniel Bauer, at that time, should be turned over. However, because of the assignment, the Bank argues that it did not, at that time, have in its possession any property, rights to property, money, credits, or bank deposits belonging to the taxpayer. The Bank concludes that it is entitled to judgment as a matter of law because its failure to turn over the funds in the escrow account was legally justifiable.

The government, in its brief in support of its own Motion for Summary Judgment and in response to the Bank's Motion for Summary Judgment, argues that when it filed, on January 14, 1982, the notice of a federal tax lien in Kootenai County, Idaho, that lien took priority over any subsequent assignment by the taxpayer pursuant to 26 U.S.C. § 6322. Section 6322 provides in part that the tax lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.S. § 6322 (Law.Co-op.1991).

The government notes that when the taxpayer attempted to convey his rights in the escrow account via the assignment, the lien had not yet been satisfied, and therefore, the lien, as long as it was properly filed, had priority over the assignment. The government notes that it properly filed its notice of federal tax lien in the county where the real property, the bank account, and the residence of the taxpayer were all located. *See* 26 U.S.C.S. § 6323(a), –(f) (Law.Co-op.1991) and Idaho Code § 45–202 (1979).

---

**3.** James Bauer was identified by the government in its responsive brief as Daniel Bauer's brother. The Bank argues that one of the material facts that prevent the government from prevailing on summary judgment is that there is no evidence before the court which establishes the relationship between James and Daniel Bauer. (Statement of Material Fact, filed Nov. 14, 1990, at 2.) However, the court finds that this issue is not material or relevant to the granting or denial of summary judgment.

Moreover, the court notes that this issue has subsequently been clarified. In the reply brief filed by the potential intervenors, Helen Bauer and Daniel Bauer, the intervenors state that James Bauer was the father of Daniel Bauer and not his brother. James Bauer has subsequently passed away since the institution of this litigation. (Reply Supp. of Intervenors, filed Sept. 3, 1991, at 1).

**4.** The Notice of Levy provided in part that: "All property, rights to property, money, credits, and bank deposits now in your possession and belonging to this taxpayer . . . and all money or other obligations owing from you to this taxpayer, are levied upon for payment of the tax plus all additions provided by law." (Complaint, filed Aug. 30, 1989, Ex. A.)

**5.** The Final Demand provided in part that: "On June 27th, 1983, a notice of levy was served on Beverly Garland. . . . The notice of levy attached property, rights to property, money, credits, and bank deposits then in your possession, to the credit of, belonging to, or owned by Daniel R. Bauer of Rt. 3 Box 422, Coeur d'Alene, Idaho 83814." (Complaint, filed Aug. 30, 1989, Ex. B.)

The government also argues that even if it would not have filed its notice of federal tax lien, the assignment was not valid because the taxpayer's brother cannot be a protected "purchaser" under Section 6323 because the taxpayer's family members are not purchasers unless adequate consideration is paid to the taxpayer in exchange for the taxpayer's property. Here, the executed assignment stated that James and Helen Bauer were to pay $1.00 for the right to receive the remaining funds in the escrow account.

The government then argues that once that lien attached to the escrow account, it remained in effect until satisfied, and that any of the taxpayer's property acquired by others is subject to the tax lien. *United States v. Donahue Indus., Inc.*, 905 F.2d 1325, 1330–31 (9th Cir.1990); *United States v. Oil Resources, Inc.*, 817 F.2d 1429, 1433 n. 3 (9th Cir.1987); *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958). The government concludes by asserting that because its lien had priority over the assignment, the Bank, pursuant to Section 6331 of Title 26, should have relinquished possession of the funds in the escrow account. 26 U.S.C.S. § 6331 (Law.Co-op.1991); *Chevron, USA, Inc. v. United States*, 705 F.2d 1487, 1490 (9th Cir.1983). Accordingly, the government seeks to recover against the Bank the value of the funds in the escrow account at the time of the Notice of Levy was served [6], plus statutory interest and costs. 26 U.S.C. § 6332(d)(1).

In response, the Bank argues that there is some confusion on the date of assessment and whether or not a notice of federal tax lien was actually filed for taxes assessed on September 20, 1980. The Notice of Levy reflects an assessment date of September 20, 1980, which is in contrast to the May 25, 1981, assessment date that appears on the notice of federal tax lien. However, having reviewed the Certificate of Assessments and Payments, the court finds that there was only one assessment that occurred on May 25, 1981, and that the September 20, 1980, date, which is listed as the date of assessment in the Notice of Levy, was actually the date that the IRS noted that the no-liability return was filed for the 1977 tax year. (Moore Decl., filed Jan. 8, 1991, Ex. 11.) Therefore, it does appear that the September 20, 1980, assessment date noted in the Notice of Levy is simply a typographical error. The court finds that there is no genuine issue of material fact as to this argument raised by the Bank, as the records are clear and speak for themselves.

### 2. *Summary Judgment Standard.*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Court Rules, Federal Rules of Civil Procedure, Rule 56(c), (Law.Co-op. 1987).

The Supreme Court has made it clear that under Rule 56, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[7]

**6.** As stated above, the government argues that the balance of this account at the time the Notice of Levy was served on June 27, 1983, was $7,840.79.

**7.** *See also* Rule 56(e), which provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

■ Moreover, under Rule 56, it is clear that in order to preclude entry of summary judgment an issue must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

### 3. *Application of summary judgment standard.*

■ Having thoroughly reviewed the record in this matter, the court finds that summary judgment is clearly appropriate in this case as there are no genuine issues of material fact. The controlling facts in this case are clearly not disputed.

Having reviewed the facts involved in the case, the court questions if the government has sued the right party. It would seem to this court that when the Bank notified the IRS that the escrow account had been assigned, the IRS, at that point in time, had other options to collect the funds in the account. If the IRS was aware of the assignment, and knew that its lien had priority over that assignment, the court questions why the IRS did not bring an action against the third-party assignees on the grounds that the assignees took the funds in the escrow account subject to the government's lien and that the assignment was voidable because of the lack of consideration in a family transaction. To the court, this would seem to have been a better approach than waiting nearly six years to file a lawsuit against the Bank for failure to honor the levy.

The court also recognizes that the Bank also had other options. Once the Bank became aware of the fact that the IRS was not going to back down on its position regarding the funds in the escrow account, it too could have avoided the current nature of this lawsuit by filing an interpleader action. From reviewing the correspondence between the Bank and the IRS, it would appear that the Bank initially had every intention of filing an interpleader action as early as March of 1985, yet the Bank failed to initiate this procedure until recently when it filed its motion for leave to file a counterclaim. (Motion for Leave to File Counterclaim, filed May 10, 1991.)

Regardless of this court's view of how this case was poorly managed by both parties, the court still must decide the issue before it today. The issue that this court must decide is not whether the IRS has named the right parties in this litigation, or whether the Bank should have filed an interpleader; but instead, the only question that is before this court is whether the Bank should be held liable for its failure to honor the Notice of Levy that was served upon it by the IRS. The court finds, after reviewing the entire record in this matter and the authority cited by the respective parties, that the Bank should not be liable under Section 6332 for failing to honor the Notice of Levy.

---

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is an genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

U.S.C.S. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law.Co-op.1987 & Supp.1990).

The court does not question the fact that the tax lien which was filed on January 14, 1982, has priority over the subsequent assignment of the funds in the escrow account. The lien clearly existed prior to transfer. However, the court is not convinced that it necessarily follows that because the lien had priority, the Bank, when it received the Notice of Levy, was required to pay over the funds in an escrow account, which at the time was in someone's name other than the taxpayer listed in the Notice of Levy.

The Bank in this case is not a transferee or assignee. The Bank in this case did not and has not claimed any interest in the funds in the escrow account. It is simply a third-party escrow holder which has contractual obligations to the parties of the escrow. Had the Bank paid over the funds to the IRS, the Bank would have run the risk of the assignees suing the Bank for turning over funds to the IRS that rightfully belonged to them. As counsel for the Bank stated in his November 20, 1984, letter to the IRS:

> [W]e are caught between the proverbial rock and the hard place. On one hand, we are in possession of property which appears to be subject to IRS Levy. On the other hand, we are potentially subject to suit from the assignees of the escrow contract for failure to remit payments to them pursuant to the assignment. . . .

(Moore Decl., filed Dec. 6, 1990, Ex. 6.)

The court simply is not willing to penalize the Bank for what the court finds is a justifiable decision not to turn over the funds. Upon service of the Notice of Levy, the Bank looked at their records and found that the escrow account no longer belonged to Daniel Bauer; that is, it was no longer in Daniel Bauer's name. At that point, they advised the IRS that the funds in the escrow account would be held by the Bank until the IRS, the taxpayer, and the third parties, resolved the conflicting claims to the funds. Given the facts in this case, the position taken by the Bank was justified. The Notice of Levy served upon the Bank stated that all property and monies "now" in the Bank's possession which "belonged" to the taxpayer were levied upon for payment of taxes. The escrow account, at the time the Notice of Levy was served upon the Bank, did not belong to the taxpayer. The demands made upon the Bank did not request the Bank to turn over property or monies owned by the taxpayer on the date of the original assessment in 1980. Accordingly, the bank had a defense for its failure to comply with the demand. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

The government asserts that "possession of the property does not provide the answer to the question of entitlement to the property; rather, *the nature of the underlying claims to the property must be analyzed to determine who is entitled to the property.*" (Reply Mem.Supp.U.S.'s Summ.J., filed Dec. 6, 1990, at 6 (emphasis added)). The government would have the responsibility of evaluating the nature and validity of these underlying claims fall upon the innocent stakeholder, the third-party escrow holder. That is, the government wants the bank to be responsible for determining whom the funds originally belonged to and whether or not the funds rightfully belong to someone else. The court, however, strongly disagrees with this rational. It should not be the Bank's obligation to research and investigate the validity of the assignment and whether or not the assignment was subject to the 1980 assessment. The court simply is not persuaded that all the risk, burden, and costs associated with that obligation should somehow be placed upon the innocent third-party escrow holder. It is not the Bank's duty to do the work of the IRS, who after all is the party seeking to have access to the funds.

The court has also reviewed in detail the main authority cited by the government in support of its position and finds that each case is clearly distinguishable from the facts in this case. In each of the cases cited by the government, the party that was found to be responsible for not honoring the levy was not a third-party escrow holder, an innocent stakeholder, a nonbuy-

er, or non lien holder. Rather, in each of the cases cited by the government, the party whose actions were in question had some kind of interest in the funds. In all these cases, the Bank was in the position similar to the assignees in this case. The parties in these cases were attempting to take the funds of the taxpayer to satisfy the taxpayer's debts and obligations with the bank. For example, in the Ninth Circuit case of *United States v. Donahue Indus., Inc.*, 905 F.2d 1325 (9th Cir.1990), the government brought an action to enforce the levy against Rainier National Bank. The bank had loans outstanding with the taxpayer, and as one of the conditions to the loans, the bank could set off the deposits, checking and savings accounts of the taxpayer against the loan amounts. Upon learning that federal agents had seized the taxpayer's premises, the bank officer had the taxpayer's due and payable loans set off against the taxpayer's bank accounts. Two and one-half hours later, the government served the Notice of Levy upon the bank. The Ninth Circuit found that even though the taxpayer's property interest in those accounts was extinguished prior to the notice of levy, the bank took the funds subject to the government's lien and should be held liable for failure to honor the levy. *Id.* at 1331. Thus, the *Donahue* case is clearly distinguishable as the bank in that case was a transferee, who would be in a similar position as the assignees in the case before this court. *See also United States v. Cache Valley Bank*, 866 F.2d 1242 (10th Cir.1989) (Bank had right of offset against unsecured loans on any bank account of the taxpayer. When bank received notice of levy, there were negligible funds in the taxpayer's accounts; thus, bank responded that there were no funds available. Later on that same day, Bank received a significant deposit to the taxpayer's account and immediately off-set the entire amount in the accounts against the unsecured loan balances. Court held bank took deposits subject to tax lien.); *United States v. Bank of Celina*, 721 F.2d 163 (6th Cir.1983) (Bank obtained payment on its loans to the taxpayer by setting off outstanding loan balances against the bank accounts of the taxpayer. After receiving notice that the IRS had padlocked the taxpayer's premises, a bank official directed, on that same day, that the due and payable loans be set-off against taxpayer's bank accounts. Two and a half hours after the bank processed these set-offs, the IRS served a notice of levy upon the bank. Court held tax lien had attached to taxpayer's accounts prior to the set-off by the bank; thus set-off was an invalid transfer.)

As can be seen from a review of these cases, these cases only support the proposition that subsequent transferees and assignees will take subject to the government's preexisting lien; they do not address the issue of the third-party escrow account holder or innocent stakeholder who has no interest in the subject funds. Accordingly, the court finds the government's authority is not persuasive. The cases would only be persuasive if the government would have sued the third-party assignees who claimed their interest in the escrow account ahead of the tax lien, or if the Bank in the case was attempting to claim some ownership interest in the funds in the account.

### 4. *Conclusion.*

Based upon the foregoing analysis and the applicable standards under Rule 56, the court finds that the Bank is entitled to summary judgment on the government's claims raised in the Complaint. In light of the undisputed facts in this case, the government has simply failed to state a claim upon which relief can be granted.

### B. MOTION FOR LEAVE TO FILE COUNTERCLAIM AND MOTIONS TO INTERVENE

■ As noted above, on May 10, 1991, the Bank moved for leave to file a counterclaim in this action which would allow the Bank, pursuant to Rule 22 of the Federal Rules of Civil Procedure, to interplead the funds in question. The government opposes this motion based upon the grounds that this action does not involve who actually is entitled to the funds in the escrow account,

but instead is focused on whether the Bank should be personally liable for its failure to honor the levy served upon it. The government emphasizes that its action against the Bank and the Bank's proposed counterclaim interpleader are two separate and distinct actions. The government argues that any person who claims an interest in funds may bring a separate Section 7426 wrongful levy action, and that the time to interplead the funds was in 1983, not some seven years later.

The Bank, in response, argues that its motion for leave to file a counterclaim was made only in the alternative, if the court were to deny its Motion for Summary Judgment. If the court grants the Bank's Motion for Summary Judgment, then the motion to file the counterclaim for interpleader purposes would be moot. The IRS may, if it so chooses, then attempt to set aside the assignment and enforce its lien by the institution of another civil action under 26 U.S.C. § 7403. This new potential suit, then, would address the question of who actually is entitled to the funds and whether the assignment was valid.

The court, having granted the Bank's Motion for Summary Judgment, finds that the Motion for Leave to File Counterclaim is moot in that the court has determined that the Bank is not personally liable for its failure to honor the Notice of Levy. It is clear that this action, currently before the court, is an action regarding only whether the Bank should be liable for its failure to honor the levy. The Complaint in this action clearly does not deal with the merits of who actually is entitled to the funds in the escrow account. This issue will have to be the subject of a separate action brought either by the Bank in an interpleader action or brought by the IRS under 26 U.S.C. § 7403 to enforce its lien upon the escrow account. Under either scenario, all the parties with an interest in the funds would be joined and the court in that action could adjudicate the respective claims and interests of the involved parties in respect.

Accordingly, the Motion for Leave to File Counterclaim should be denied. For these same reasons, the motions to intervene by the Daniel and Helen Bauer should also be denied. The claims asserted by the Bauers are not the subject of the litigation currently before the court. Their claims relate to the question of a wrongful levy and/or a valid assignment, and are separate and distinct claims from a failure to honor levy action which this court is dismissing. The court, pursuant to Rule 24 of the Federal Rules of Civil Procedure, finds that denying the motions to intervene will not impair, impede, or prejudice the ability of these parties to protect their claims and interests in the funds in the escrow account, as these claims and interests can be asserted in a separate action.

### III. ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the United States' Motion for Summary Judgment, filed November 5, 1991, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment, filed October 15, 1990, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that the plaintiff's Complaint in this action, should be, and is hereby, DISMISSED.

IT IS FURTHER ORDERED that the defendant's Motion for Leave to File Counterclaim, filed May 10, 1991, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the motions to intervene, filed by Helen Bauer and Daniel Bauer on July 22, 1991, should be, and are hereby, DENIED.